IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT GINSBURG, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10CV3064 |
| | ) | |
| V. | ) | |
| | ) | |
| CONCORDIA UNIVERSITY, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff's complaint alleges the plaintiff, Robert Ginsburg ("Ginsburg"), served as the head women's softball coach for the defendant, Concordia University ("Concordia"). Ginsburg, a Catholic, alleges he was subjected to religious discrimination in violation of Title VII, 42 U.S.C. §§ 2000e -1 to -17, when he was terminated from his coaching position at Concordia. Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Concordia has moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Concordia also requests an award of attorneys' fees, asserting Ginsburg's claims are frivolous and were brought in bad faith. For the reasons set forth below, the motion will be granted in part and denied in part. However, the granting of Concordia's motion to court finds Ginsburg's complaint fails to state a claim. Rather than dismissing the plaintiff's complaint at this time, Ginsburg will be afforded the opportunity to file an amended complaint.

## ANALYSIS

In support of his claim, Ginsburg offers the following allegations in his complaint:

- Concordia University is a "Lutheran College" located in Seward, Nebraska (filing no. 1, ¶3).

- On or about October 4, 2008, Ginsburg was hired as the women's softball coach at Concordia (Id. at ¶ 4).

- Ginsburg is a member of the Catholic faith, and Concordia was aware Ginsburg was not a Lutheran at the time he was hired (Id. at ¶ 4).

- At the time Ginsburg was hired by Concordia he "agreed to be sensitive to the school's beliefs, follow all religious guideline[s] in his coaching and do nothing in his personal life that would discredit or disrespect Lutheran values" (Id. at ¶ 5). Ginsburg did not violate that condition of employment. Id.

- On or about March 25, 2009, during the course of a Concordia softball game, Ginsburg "made a coaching decision and a comment to assistant coach Randy Faulkerts" (Id. at ¶6). Faulkerts, a Lutheran, "immediately" resigned his position as assistant coach (Id.).

- On or about March 26, 2009, the president, athletic director, vice president of admissions of Concordia, and Faulkerts met with the softball team (Id. at ¶6). Ginsburg not invited to the meeting, nor was he present (Id.).

- On or about March 27, 2009, Ginsburg was informed by the president of Concordia that his employment was being terminated (Id. at ¶7).

- Faulkerts replaced Ginsburg as the head coach of the Concordia softball team (Id.). Faulkerts was not qualified for the position of head coach (Id.).

- Ginsburg was more qualified for the head coaching position and his performance was satisfactory or above during his employment with Concordia (Id. at ¶ 9).

- Ginsburg filed a complaint with the Nebraska Equal Opportunity Commission on or about June 4, 2009 (Id. at ¶10). Ginsburg received a Right to Sue Notice on or about January 13, 2010 (Id.).

A.   **The 12(b)(6) Motion.**

Concordia contends that Ginsburg's complaint should be dismissed for failure to state a claim for which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Eighth Circuit recently summarized how the court should analyze a Rule 12(b)(6) motion:

> Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed. 868 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." Id. It is not, however, a "probability requirement." Id. Thus, "a well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550

> U.S. at 556, 127 S.Ct. 1955 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).
>
> A complaint states a plausible claim for relief if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. Several principals guide us in determining whether a complaint meets this standard. First, the court must take the plaintiff's factual allegations as true. Id. at 1949-50. This tenet does not apply, however, to legal conclusions or "formulaic recitation of the elements of a cause of action"; such allegations may properly be set aside. Id. (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). In addition, some factual allegations may be so indeterminate that they require "further factual enhancement" in order to state a claim. Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955;) see also Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009).
>
> Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible. See Vila v. Inter-Am. Inv. Corp., 570 F.3d 274, 285 (D.C. Cir. 2009) (factual allegations should be "viewed in their totality"); cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) . . . . Ultimately, evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

The Iqbal standard applies to all civil cases, including those based on employment discrimination. Iqbal, 129 S.Ct. at 1953. A plaintiff alleging employment discrimination need not make out a prima facie case of discrimination in his or her complaint. See Fowler v. Scores Holding Co., Inc., 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009) (citing Swierkiewicz, 534 U.S. at 514). "An employment discrimination complaint 'must include only a short and plain statement of the claim . . . [that] gives[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " Fowler, 677 F. Supp. 2d at 679 (quoting

4

Swierkiewicz, 534 U.S. at 512)). "Accordingly, while a complaint need not contain specific facts establishing a prima facie case of employment discrimination to overcome a Rule 12(b)(6) motion, the claim must be facially plausible, and must give fair notice to the defendants of the basis for the claim." Fowler, 677 F. Supp. 2d at 679. It is within this framework that this court will evaluate the sufficiency of Ginsburg's complaint.

Although the pleading requirements necessary to survive a Rule 12(b)(6) motion are not onerous, Ginsburg's complaint does not rise to the level of required specificity. Ginsburg's complaint can be boiled down to a few basic allegations: 1) Concordia is a Lutheran University; 2) Ginsburg is not a Lutheran; 3) Ginsburg made a "coaching decision and a comment" to his assistant coach; 4) Ginsburg's employment was terminated and he was replaced by a less qualified Lutheran. These allegations, even if accepted as true, do not meet the "plausibility standard" required by Twombly and Iqbal.

The fatal flaw in Ginsburg's complaint is that he alleges no facts from which the court can infer he was dismissed due to his religion – a requirement under Iqbal. 129 S.Ct. at 1949. A plaintiff's factual allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 556; compare Moore v. Metropolitan Human Service Dist., No. 096470, 2010 WL 1462224 (E.D.La. April 8, 2010) (dismissing a hostile work environment claim where the plaintiff did not identify any adverse treatment connected to her religion), McDonald v. Overnite Express, No. 085069, 2009 WL 3517976 (D. Minn. 2009) (dismissing a discrimination claim where the plaintiff provided no more than conclusory statements of the alleged discriminatory behavior), Foster v. Humane Society of Rochester and Monroe County, Inc., ___ F. Supp. 2d. ___, 2010 WL 2867325 (W.D.N.Y. 2010) (dismissing a claim for hostile work environment because the plaintiff did not allege the hostility she faced was causally related to her gender), and Cheatam v. Blanda, No. 1:08cv299, 2010 WL 2209217 (W.D. Tex. April 23, 2010) (dismissing a discrimination

claim where no factual allegations were pled sufficient to raise an inference that the plaintiff was terminated due to her race), with Dolgaleva v. Virginia Beach City Public Schools, 364 Fed.Appx. 820 (4th Cir. 2010)(allowing a discrimination complaint to survive a motion to dismiss where the plaintiff was told that her ancestry was being held against her), and Ali v. District of Columbia Gov't, 697 F. Supp. 2d 88, 91-92 (plaintiff's discrimination claim survived a 12(b)(6) because he alleged his supervisor told the plaintiff he would have to chose between his job and his religion).

Although Ginsburg does not need to make a prima facie case in his complaint, he must provide the court with some basis to infer he was fired due to his religion. Iqbal, 129 S.Ct. at 1949; Moore, 2010 WL 1462224 at *5; McDonald, 2009 WL 3517976 at *7; Cheatam, 2010 WL 2209217 at *5. He has not done so.  To the contrary, based on the allegations contained in his complaint, the only reasonable inference the court can draw is that Ginsburg's termination had to do with the unspecified coaching decision and/or the comment to his assistant coach and not his religion.  It is simply not sufficient to allege he was terminated and replaced by a Faulkerts, a less qualified coach, but a Lutheran.  Ginsburg must provide more factual context. See, e.g., Foster,    F. Supp. 2d. at    , 2010 WL 2867325 at *6 (finding an allegation in an age discrimination suit that a worker was replaced by a younger employee was, by itself, not enough to give rise to a claim without some factual support for causal connection between the plaintiff's age and her termination).  Ginsburg's factual allegations do little more than provide for the possibility that his religion played a part in his termination.  A mere possibility of discriminatory conduct is not enough to survive a motion to dismiss. See Iqbal, 129 S.Ct. at 1949.

claim where no factual allegations were pled sufficient to raise an inference that the plaintiff was terminated due to her race), with Dolgaleva v. Virginia Beach City Public Schools, 364 Fed.Appx. 820 (4th Cir. 2010)(allowing a discrimination complaint to survive a motion to dismiss where the plaintiff was told that her ancestry was being held against her), and Ali v. District of Columbia Gov't, 697 F. Supp. 2d 88, 91-92 (plaintiff's discrimination claim survived a 12(b)(6) because he alleged his supervisor told the plaintiff he would have to chose between his job and his religion).

Although Ginsburg does not need to make a prima facie case in his complaint, he must provide the court with some basis to infer he was fired due to his religion. Iqbal, 129 S.Ct. at 1949; Moore, 2010 WL 1462224 at *5; McDonald, 2009 WL 3517976 at *7; Cheatam, 2010 WL 2209217 at *5. He has not done so.  To the contrary, based on the allegations contained in his complaint, the only reasonable inference the court can draw is that Ginsburg's termination had to do with the unspecified coaching decision and/or the comment to his assistant coach and not his religion.  It is simply not sufficient to allege he was terminated and replaced by a Faulkerts, a less qualified coach, but a Lutheran.  Ginsburg must provide more factual context. See, e.g., Foster,    F. Supp. 2d. at    , 2010 WL 2867325 at *6 (finding an allegation in an age discrimination suit that a worker was replaced by a younger employee was, by itself, not enough to give rise to a claim without some factual support for causal connection between the plaintiff's age and her termination).  Ginsburg's factual allegations do little more than provide for the possibility that his religion played a part in his termination.  A mere possibility of discriminatory conduct is not enough to survive a motion to dismiss. See Iqbal, 129 S.Ct. at 1949.

Ginsburg will be afforded the opportunity to file an amended complaints within 15 days of this order.[1] If the plaintiff fails to timely file an amended complaint, or if his timely filed amended complaint is again successfully challenged by the defendant as failing to state a claim, Ginsburg's claims against Concordia will be dismissed pursuant to Rule 12(b)(6).

**B.     The 12(b)(1) motion.**

Concordia further argues that even if Mr. Ginsburg's pleading was not defective for the reasons stated above, his complaint should be dismissed nonetheless because Concordia is statutorily exempt from Title VII; therefore, the court lacks subject matter jurisdiction to rule on his claims.

The source of the argued exemption from Title VII is found in two sections of the underlying statutes. Pursuant to 42 U.S.C. §2000e-1(a), Title VII does not apply to:

> [A] religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. §2000e-1(a).

Further, 42 U.S.C. §2000e-2(e)(2) permits a religious educational institution to:

> [H]ire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole

---

[1] Pursuant to Federal Rule of Civil Procedure 15(a)(2) a party may amend a pleading with leave of the court and such leave is to be freely given"when justice so requires."

> or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion.

42 U.S.C. §2000e-2(e)(2).

Concordia argues federal courts have no subject matter jurisdiction to hear cases involving allegations of religious discrimination in employment decisions by religious institutions. Concordia asserts the aforementioned statutory exemptions "reflect a decision by Congress that the government interest in eliminating religious discrimination by religious organizations is outweighed by the rights of those organizations to be free from government intervention," ( Little, 929 F.2d at 951), and pursuant to the exemptions, 42 U.S.C. §§ 2000e-1 to -17 do not apply to religious organizations. Concordia therefore argues the court lacks subject matter jurisdiction hear cases based on an alleged violation of 42 U.S.C. §§ 2000e et. seq by a religious educational institution. Little, 929 F.2d at 951.

While it is entirely possible that Concordia falls under either or both of these exceptions, the court currently does not have enough evidence before it regarding the specifics of Concordia's relationship to the Lutheran Church, for the purposes of 42 U.S.C §2000e-1, to make such a finding.[2] See, e.g., Killinger v. Samford University, 113 F.3d 196 (11th Cir. 1997) (finding a University qualified for both exemptions after it provided "extensive"evidence regarding its history, funding and curriculum); Hall v. Baptist Memorial

---

[2] While Ginsburg does describe Concordia as a "Lutheran College" and states he acknowledges he agreed to "be sensitive to the school's beliefs, follow all religious guidelines in his coaching and do nothing in his personal life that would discredit or disrespect the Lutheran values" the court does not take these statements to mean that Ginsburg is conceding that Concordia qualifies for the above cited exemptions in 42 U.S.C. §§ 2000e-1 to -2.

Health Care Corp., 215 F.3d 618 (6th Cir. 2000)(citing to evidence regarding the health care institution's funding, staff composition, purpose statement, bylaws, charter and operation in finding that it qualified for the exemptions under 42 U.S.C. §§ 2000e-1 to -2).  Thus, to the extent that Concordia's motion to dismiss under 12(b)(1) is based on its alleged exemption from Title VII, the motion will be denied without prejudice to reconsideration upon a more thorough record.

      **C.**    **Request for Attorneys' Fees.**

As part of its motion to dismiss, Concordia requests an award of attorneys' fees under 42 U.S.C. § 2000e-5(k), which provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5(k).

Successful defendants are entitled to an order of fees only if the plaintiff's claims are initially frivolous or the plaintiff continues to litigate the case after it became clear his or her case had no merit.  See Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 993 (8th Cir. 2003).  At this stage in the pleadings, the court is not prepared to award Concordia its attorneys' fees.[3]  Accordingly, Concordia's request for an award of attorney's fees is denied.

---

[3] The court is providing Ginsburg an opportunity to cure the noted defects in his complaint provided such amendments can be made within the parameters of Rule 11 and the plaintiff wants to proceed with this case. However, the plaintiff is hereby notified that attorney fees may be awarded if his claim lacks a factual basis and he nonetheless continues to pursue this litigation.

Accordingly,

IT IS ORDERED:

Concordia's motion to dismiss and request for attorneys' fees, (filing no. 12), is granted in part and denied in parts as follows:

1. To the extent Concordia alleges the plaintiff's complaint fails to state a claim, the motion is granted. The plaintiff is given 15 days from the date of this order to file an amended complaint which states a claim. If the plaintiff fails to timely file an amended complaint, or if his timely filed amended complaint is again successfully challenged by the defendant as failing to state a claim, Ginsburg's claims against Concordia will be dismissed pursuant to Rule 12(b)(6).

2. Concordia's motion to dismiss, pursuant to Rule 12(b)(1), is denied without prejudice.

3. Concordia's motion for attorneys' fees is denied without prejudice.

DATED this 14th day of September, 2010.

                                        BY THE COURT:

                                        s/ *Cheryl R. Zwart*
                                        United States Magistrate Judge