IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT GINSBURG, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10CV3064 |
| | ) | |
| v. | ) | |
| | ) | |
| CONCORDIA UNIVERSITY, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant Concordia University's ("Concordia") Motion for Summary Judgment or in the alternative Motion to Dismiss, (filing no. 23) and its Motion for Attorney's Fees (filing no. 25). For the reasons set forth below, Concordia's Motion for Summary Judgment is granted. The court will also consider the defendant's motion for attorney fees upon further submission of evidence by the defendant as set forth in the court's order.


PROCEDURAL HISTORY


Mr. Ginsburg originally filed this discrimination suit against Concordia on April 12, 2010, (filing no. 1), and Concordia responded by moving to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (filing no.12). The undersigned found the complaint did not state a claim for which relief could be granted under Rule 12(b)(6) and provided Mr. Ginsburg fifteen (15) days to file an amended complaint. Filing No. 21, p. 7. Although the court did not find Concordia was exempt from certain aspects of Title VII as a religious organization, it did not preclude such a finding. The court noted that Concordia had not provided any evidence to support its claim that it qualified for the Title VII exemptions found in 42 U.S.C. § 2000e-1(a) and/or 42 U.S.C. § 2000e-2(e)(2). Mr. Ginsburg filed an amended complaint, (filing no. 22) in an attempt to cure the noted defects.

Concordia countered with the motion now before the court, again alleging it is exempt from a religious discrimination suit under Title VII and alternatively arguing Mr. Ginsburg still has not sufficiently pled a cause of action under Rule 12(b)(6).

## FACTUAL FINDINGS

For the purposes of the Motion for Summary Judgment only, the parties have adopted the following undisputed facts, as originally set forth in Concordia's brief in support of its motions.  See Filing Nos. 28 and 33.

1.  On or about October 4, 2008, plaintiff was hired as the women's softball coach at Concordia. Filing No. 22, ¶ 4.

2.  Plaintiff is a member of the Catholic faith. Filing No. 22, ¶ 4.

3.  When the plaintiff was hired, he "agreed to be sensitive to the school's beliefs, follow all religious guidelines in his coaching and do nothing in his personal life that would discredit or disrespect the Lutheran values." Filing No. 22, ¶ 5.

4.  On or about March 25, 2009, plaintiff made a coaching decision and comment to Assistant Coach Randy Folkerts that Mr. Folkerts should "concentrate on his area and leave the pitching decisions to the assistant coach."  Filing No. 22, ¶ 6. Mr. Folkerts immediately resigned.  Filing No. 22, ¶ 6.

5.  On or about March 26, 2009, the president, the athletic director, vice president, Mr. Folkerts and the softball team met. Filing No. 22, ¶ 6.  Plaintiff was not invited or present at that meeting.  Filing No. 22, ¶ 6.

6.  On or about March 27, 2009, the president of Concordia informed Plaintiff that his employment was being terminated.  Filing No. 22, ¶ 7.

7.  Plaintiff was never told the reasons for his termination.  Filing No. 22, ¶ 6.

8.      Mr. Folkerts replaced Plaintiff as the head coach of the Concordia softball team.  Filing No. 22, ¶ 7.

9.      Mr. Folkerts is a Lutheran.  Filing No. 22, ¶ 6.

10.     Concordia is a Lutheran educational institution located at 800 North Columbia Ave., Seward, Nebraska 68434.  Filing Nos. 22, ¶ 3 and 24-1, p.1 at ¶ 3.

11.     Concordia was founded in 1894 by The Lutheran Church – Missouri Synod. Filing No. 24-1, p.1 at ¶ 4.

12.     Concordia is an affiliate of The Lutheran Church – Missouri Synod and perpetually maintains membership as part of the Missouri Synod Organization.  Filing No. 24-1, pp. 1-2 at ¶ 5.

13.     Concordia is committed to furnishing classical, technical, academic and religious education to male and female students who are in sympathy with the religious teaching and faith of the Lutheran denomination.  Filing No. 24-1, p. 2 at ¶ 6.

14.     Concordia's programs and activities are set forth in an explicit value system that has as its core: faith in Jesus Christ as the Son of God and only Savior in the world, commitment to the Holy Scriptures as the communicator of that faith, and commitment to the Lutheran Confessions as a true exposition of the scriptures.  Filing No. 24-1, p. 3 at ¶ 13.

15.     Concordia informs students of its Christian mission and its relationship with The Lutheran Church – Missouri Synod principles at orientation and open houses.  Filing No. 24-1, p. 2 at ¶ 11.

16.     Plaintiff sole theory of recovery is employment discrimination on the basis of religion under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e). Filing 22, ¶ 1.

3

ANALYSIS

A.     **Summary Judgment Standard.**

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits . . . show that there is no genuine issue as to any material fact and that the move party is entitled to a judgment as a matter of law."  In order to avoid summary judgment the opposing party must "set forth specific facts showing that there is a genuine issue of material fact for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is genuine only if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

B.     **Title VII Exemptions.**

Mr. Ginsburg argues he was discharged from his duties as head softball coach at Concordia due to his religion, in violation of Title VII, 42 U.S.C. §§ 2000e -1 to -17.  In turn, Concordia argues summary judgment is warranted because Concordia is statutorily exempt from Title VII religious discrimination claims pertaining to their practices of hiring and terminating employees.

The argued exemptions are set forth in 42 U.S.C. §2000e-1(a) and 42 U.S.C. §2000e-2(e)(2).  Pursuant to 42 U.S.C. §2000e-1(a), Title VII does not apply to:

[A] religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform

> work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. §2000e-1(a).  Further, 42 U.S.C. §2000e-2(e)(2) permits a religious educational institution to:

> [H]ire and employ employees of a particular religion is such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion.

42 U.S.C. §2000e-2(e)(2).

The parties have not cited, and the court has not found, Eighth Circuit law on the religious exemption issues raised by defendant's motion.  However, as set forth in the court's prior order on defendant's motion to dismiss, other circuits have addressed the issue. See filing no. 21, pp. 8-9 (citing  Killinger v. Samford University, 113 F.3d 196 (11th Cir. 1997); Hall v. Baptist Memorial Health Care Corp., 215 F.3d 618 (6th Cir. 2000).

In Hall, the Sixth Circuit examined a religious discrimination case where the plaintiff sued the Baptist Memorial College of Health Sciences (the "College"), alleging her employment was unlawfully terminated based on her religion.  Hall, 215 F.3d at 621.  The plaintiff, who was by all accounts a good employee without any disciplinary actions during her employment, was fired when the administration at the college learned she was becoming a lay pastor at a non-denominational church that consisted of many homosexual members – a violation of the tenants of the Southern Baptist Convention.  The plaintiff brought her suit based on religious discrimination under Title VII.  The College countered that it was

5

exempt as a religious educational institution under the exemptions to Title VII found in 42 U.S.C. §§ 2000e-1 to -2.

In finding the College qualified as a "religious educational institution" under 42 U.S.C. § 2000e-2(e)(2), the court "consider[ed] and weigh[ed] the religious and secular characteristics" of the College. Hall, 215 F.3d at 624. Of particular import, the court noted that the college "was founded by sectarian organizations," had a direct relationship with the Baptist church, the College atmosphere was "permeated with religious overtones" including routine chapel services and a well publicized religious mission of "preaching, teaching and healing." Hall, 215 F.3d at 624-25.

In Killinger, the Eleventh Circuit conducted a similar analysis in determining a university was exempt as a "religious educational institution" pursuant to 42 U.SC. § 2000e-1(a). The Killinger court noted, that the university received substantial financial support from the Alabama Baptist State Convention, a high percentage of the faculty and students were Baptist, the Internal Revenue Service tax exemption was based on its status as a religious organization, and it campus similarly permeated a religious message. Killinger, 113 F.3d at 198-99.

More recently courts have attempted to better define what criteria used to determine whether an organization is "a religious corporation, association, educational institution, or society" under 42 U.S.C. § 2000e-1. See LeBoon v. Lancaster Jewish Community Center Ass'n., 503 F.3d 217 (3d Cir. 2007). The LeBoon court listed the following factors:

> (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or

6

synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.

Id. at 226 (citations omitted); see also Spencer v. World Vision, Inc., 619 F.3d 1109, 1119 (9th Cir. 2010)(applying a 3 factor test: (1) is the entity organized for a self-identified religious purpose; (2) is the organization engaged in activity consistent with, and in furtherance of, those religious purposes; and (3) does it hold itself out to the public as religious).

The following undisputed facts establish Concordia falls under the Title VII exemptions found in 42 U.S.C. §§ 2000e-1 and -2.

- Concordia was founded by the Lutheran Church-Missouri Synod (filing no. 24-1, ¶4);

- Concordia continues to be an affiliate of the The Lutheran Church-Missouri Synod and maintains a membership in the organization (filing no. 24-1, ¶5);

- the Articles of Incorporation expressly state that Concordia was organized to "own, operate and maintain a Christian College . . ." and it "shall furnish . . . religious education to both men and women students who are in sympathy with the religious teaching and faith of the Lutheran denomination" (filing no. 24-1, ¶6);

- Concordia's tax exempt status under section 501(c)(3) of the Internal Revenue Code is included in the group ruling issued to the Lutheran Church-Missouri Synod (filing no. 24-1, ¶8);

- The mission statement of Concordia is: "Concordia University, Nebraska is an excellent academic and Christ-centered community equipping men and

7

women for lives of learning, service and leadership in the church and world" (filing no. 24-1, ¶9);

• Concordia's bylaws mandate that the Board of Regents include numerous members of the Lutheran Faith including: the President of the Nebraska District of the Lutheran Church, ordained ministers and commissioned ministers. In addition all vacancies must be filled "according to Lutheran Church-Missouri Synod Handbook policy" (filing no. 24-1, ex. A);

• Campus life involves daily chapel services for the students and programs that promote spiritual growth (filing no. 24-1, ¶¶ 14 -15).

The founding and operation of Concordia is nearly indistinguishable from the religious institutions deemed exempt from Title VII in Hall and Killinger. See, Hall, 215 F.3d at 621; Killinger, 113 F.3d at 198-99. Indeed, reviewing the facts of this case through the lens of the LeBoon decision, virtually everyone of the nine identified factors cuts firmly in favor of Concordia. Concordia is a non-profit corporation affiliated with a religious entity, its organizing documents expressly state a religious purpose, Concordia is required to have representatives of the Lutheran Church-Missouri Synod on its board, it holds itself out to be a religious institution, its campus activities involve religious activities such as chapel services, and its curriculum involves religious instruction. See LeBoon, 503 F.3d at 226. Moreover, Mr. Ginsburg acknowledges that he was well aware of Concordia's close affiliation with the Lutheran Church-Missouri Synod because when he was initially hired he "agreed to be sensitive to the school's beliefs, follow all religious guideline in his coaching and do nothing in his personal life that would discredit or disrespect the Lutheran values." Filing No. 22, ¶ 5.

The cases relied upon by Mr. Ginsburg can be easily distinguished from the instant one. For instance, Equal Employment Opportunity Commission v. Twonley, 859 F.2d 610 (9th Cir. 1988), involved a private for-profit business that was owned by "born again" Christians. The company was a manufacturing business and was not affiliated in any way

8

with a church or other religious organization.  Id. at 619.  Not surprisingly, the court determined the business did not qualify as a religious organization for the purposes of Title VII exemptions.  Id.

Likewise, in Fike v. United Methodist Children's Home of Virginia, Inc., 547 F.Supp. 286 (E.D. Virginia 1982), the court refused to find a home for orphans qualified for the Title VII religious exemptions.  Although the home was originally established and operated with a religious mission and purpose, the court noted that it had abandoned its initial religious purpose and the day to day operations were "practically devoid of religious content or training."  Id. at 290; see also E.E.O.C. v. Kamehameha Schools/Bishop Estate, 990 F.2d 458 (9th Cir. 1993)(finding the schools operation was largely secular in nature and the organizing documents did not provide that the school's purpose was religious in nature).  The court held that to be considered religious, the organization must have "something more than a board of trustees who are members of a church."  Id.  As explained above, Concordia is clearly an active and operating religious educational institution, readily distinguishable from the organization in Fike and the school in Kamehameha.

Mr. Ginsburg previously advanced two equally flawed arguments.  First, he asserts that since Concordia hired Mr. Ginsburg with knowledge he was not Lutheran, they have somehow waived there exempt status.  This is incorrect.  If an institution qualifies for the exemptions under Title VII, it cannot waive its right to assert protection under those exemptions.  Moreover, the decision to fire an employee for religious reasons falls under the protection of the exemptions found in 42 U.S.C. §§ 2000e-1 and -2.  See Hall, 215 F.3d at 624.

Mr. Ginsburg also argues that even if Concordia otherwise falls under the religious institution exemptions of Title VII, coaching softball is a strictly secular activity and the

9

exemption does not apply to the secular activity of an otherwise religious organization. Even assuming coaching at a religious institution is strictly secular, the exemptions cover <u>all</u> of a religious organization's activities, not just the ones that are overtly religious or spiritual in nature. <u>See</u> Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos, 483 U.S. 327 (1987) (holding the exemption permitted a church to fire an employee for religious reasons, even though the employee worked in a secular capacity).

Based on the undisputed facts of this case, Concordia qualifies as a "religious educational institution" under 42 U.S.C. §§ 2000e-1 and -2 and is exempt from Title VII.[1]

C.    **Motion for Attorneys' Fees**

Concordia requests payment of its attorneys' fees under 42 U.S.C § 2000e-5(k), which provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5(k).  Any award of attorney's fees is left to the discretion of the court. See Peanick v. Morris, 96 F.3d 316, (8th Cir. 1996).

---

[1]  Because the court is granting Concordia's motion for summary judgment it need not address the Motion to Dismiss under Rule 12(b)(6).

The defendant's evidence in support of its attorney fees does not include an itemization of time and expenses.  The court needs that information before deciding if, and to what extent, fees may be awarded.

Accordingly,

IT IS ORDERED:

1)      Concordia's motion for summary judgment (filing no. 23) is granted.

2)      Regarding Concordia University's motion for attorney fees, (filing no. 25):

        a.      On or before January 19, 2011, Concordia University shall submit an itemized billing statement in support of its motion for attorney fees along with any additional briefing or explanation it believes is warranted.  Concordia shall refer to NECivR 54.4 for guidance in preparing the itemized statement.

        b.      The plaintiff shall have until January 31, 2011 to file any objection, brief, or other response to Concordia's motion for attorney fees.

        c.      No reply brief shall be filed absent leave of the court for good cause shown.

DATED this 5th day of January, 2011.

                        BY THE COURT:

                        *s/ Cheryl R. Zwart*
                        United States Magistrate Judge

_____

        *This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.